# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROLAND G. DES JARDIN,

        Plaintiff,

        v.                                                                Case No.  06-C-461

DOUGLAS BRIGGS and
MATTHEW FRANK,

        Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the court is the defendants' "Motion for Summary Judgment," (Doc. #22) seeking dismissal of the pro se plaintiff's two remaining civil rights claims. (1) a First Amendment claim that, as a condition of his parole, he was required to participate in a drug treatment program where God and religious messages were being discussed; and (2) a Fourteenth Amendment procedural due process claim concerning his allegation that he was placed in jail without a hearing after walking out of a drug treatment program meeting.

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a

verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id*. at 325. Once this initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id*. at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or on conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

## I. Relevant Undisputed Facts

In compliance with Civil Local Rule 56.2(a), the defendants – the movants – filed proposed findings of fact which identified those facts upon which there is no genuine issue. The defendants cited evidentiary material to support their factual propositions. In response, the plaintiff filed a brief (captioned "Plaintiff's Answer to Defendant's [sic] Motion for Summary Judgment") but did not file a separate response to defendants' proposed findings of fact or submit his own factual propositions as contemplated under Civil Local Rule 56.2(b).

The consequences for the failure of the nonmovant to submit an appropriate response to a movant's proposed finding of fact is clear under Civil Local Rule 56.2(e): the Court must conclude that there is no genuine material issue to that factual finding.

A review of the record reveals that the plaintiff received notice of the summary judgment procedures and the consequences for failing to follow them as required under Civil Local Rule 56.1. Therefore, the facts, as identified by the defendants in their proposed findings of fact, are undisputed. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local rules regarding summary judgment obligations], sustaining the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

Based on the above, the undisputed facts are as follows. At all times relevant to this action, the plaintiff was a parolee in the custody and control of the Wisconsin Department of Corrections, Division of Community Corrections (DCC) (Defendants'

3

Proposed Findings of Fact [DPFOF] ¶ 2). Defendant Douglas Briggs is employed by the Wisconsin Department of Corrections (DOC) as a Probation/Parole Agent in the Division of Community Corrections (DCC), and has been so employed since May 8, 2000 (DPFOF ¶ 3.) As a Probation/Parole Agent, Briggs' duties include, but are not limited to, providing services to protect the public by holding offenders accountable for their behavior; preparing case plans for offenders; fostering law-abiding behavior and positive participation of individual offenders in the community; preparing accurate and timely investigations, reports, and case records; and community outreach activities, liaison activities and other special assignments as required. (DPFOF ¶ 4.) Briggs' position may require him to provide a variety of services for a targeted caseload in one or more of the following areas: intensive sanctions, sex offender, mental health, drug, high risk, program liaison, interstate compact, and/or other programs identified by the supervisor. *(Id.)* From approximately July 29, 2003, until July 12, 2005, Briggs was Des Jardin's probation/parole agent. (DPFOF ¶ 5.) On November 15, 1993, the plaintiff was convicted in Outagamie County, Case 93CF303, of Burglary (B case) and was sentenced to three years in prison. (DPFOF ¶ 6.) On November 29, 1993, the plaintiff was convicted in Waupaca County, Case 93CF150, of Battery to a Prisoner (C case) and was sentenced to two years. (*Id.*) On April 15, 1999, the plaintiff was convicted in Outagamie County, Case 98CF662, of Operating a Motor without Owner's Consent (D case) and was sentenced to prison for five years. (*Id.*)

Des Jardin was released from prison and placed on parole supervision on July 29, 2003. (*Id.*) He was subject to re-incarceration for a period of eight months and 19 days on his "B case," six months and 23 days, consecutive, on his "C case," and one

year, eight months and one day, consecutive on his "D case." (*Id.*) Des Jardin was ultimately released from his "D case" on October 21, 2006. (*Id.*)

The plaintiff signed and received a copy of his probation/parole rules on July 29, 2003, acknowledging that he reviewed and understood the rules. (DPFOF ¶ 7.) The rules provided in part as follows:

> Rule #3: You shall make every effort to accept the opportunities and counseling offered by supervision.
>
> Rule #21: You shall NOT possess, consume or buy any alcoholic beverages. You shall not enter any bar, tavern nor other establishment where the primary business is the sale of alcohol. THIS IS A NO DRINK RULE.
>
> Rule #29: You shall participate [in an] AODA counseling programming.

(DPFOF ¶ 8.)

The plaintiff began the AODA counseling program but did not complete it due to the fact that he violated his parole. (*Id.*) Also, his parole was not contingent on him receiving religious instruction and professing religious faith. (DPFOF ¶ 9.)

On September 2, 2003, plaintiff violated his parole by purchasing a vehicle without Briggs' consent, failing to report a police contact, and providing false information to Briggs. (DPFOF ¶ 10.) On September 15, 2003, the plaintiff drove his vehicle without a valid driver's license. (DPFOF ¶ 11.) On October 3, 2003, he entered a tavern, where he consumed alcohol and stole $250.00 from Christine Wahls. (DPFOF ¶ 12.) Due to these violations, Briggs recommended revocation of plaintiff's parole. (DPFOF ¶ 13.)

On October 21, 2003, the plaintiff was served with a Notice of Violation, Recommended Action and Statement of Hearing Rights. (DPFOF ¶ 14.) A final

5

revocation hearing was held on November 24, 2003. (DPFOF ¶ 15.) At the hearing, the plaintiff proposed an Alternative to Revocation (ATR) that involved confinement coupled with community-based treatment. (DPFOF ¶ 16.) Administrative Law Judge Charles R. Guokas found the plaintiff's proposal to be well thought out and recommended an ATR pursuant to which the plaintiff would attend treatment through either the Kenosha Correctional Center (KCC) or the Zimmerman Corporation (ZCI). (DPFOF ¶ 17; Affidavit of Douglas Briggs [Briggs Aff.], ¶ 16, Ex. A.) Judge Guokas stated that "treatment can best be provided to client with a confined setting with work release privileges without revocation." (*Id.*) The plaintiff agreed to the ATR mandated by Judge Guokas and his parole was not revoked. (*Id.*)

The Zimmerman Corporation (ZCI) is a privately owned AODA treatment organization. (DPFOF ¶ 18.) On January 8, 2004, Briggs met with the plaintiff and explained his ATR plan. (DPFOF ¶ 19.) Briggs informed the plaintiff that the ZCI program was a back-up plan in case KCC would not accept his case and the plaintiff accepted the conditions of this ATR. (*Id.*) Briggs does not recall if the plaintiff signed anything regarding the ATR. (*Id.*)

On January 13, 2004, Briggs learned that KCC rejected Des Jardin's case due to his prior escape history. (DPFOF ¶ 20.) Therefore, Briggs sent the referral for him to enter the ZCI program, which the plaintiff began on January 28, 2004. (*Id.*) The ZCI program consisted of 30-days of in-house treatment followed by nine-months of aftercare which required the plaintiff to attend AODA treatment groups and encouraged attendance of an AODA support group of his choice. (DPFOF ¶ 21.) The ZCI program is not religious based and does not mention God. (*Id.*)

On February 24, 2004, the plaintiff completed the in-house portion of ZCI's AODA treatment program in the Racine County Jail. (DPFOF ¶ 22.) Immediately, the DCC provided a Transitional Living Program (TLP) site to him. (*Id.*) While at his TLP site, the plaintiff requested his electronic monitoring schedule to be changed to accommodate his employment and his choice of an AODA support meeting. (DPFOF ¶ 23.) The plaintiff informed Briggs that he wanted to attend Alcoholics Anonymous (AA)/Alano Club in Racine, Wisconsin, a religious-based support group. (*Id.*) There were several other AODA support groups that the plaintiff could have chosen, including nondenominational or nonreligious groups. (DPFOF ¶ 24.) The plaintiff attended three AA support group meetings weekly. (DPFOF ¶ 25.)

On April 5, 2004, the plaintiff requested permission to live with Gracie Kuemin, whom he met at the AA/Alano Club. (DPFOF ¶ 26.) He moved in with her two days later on April 7, 2004. (DPFOF ¶ 27.) On May 3, May 13, and May 20, 2004, the plaintiff attended the ZCI AODA treatment group, in addition to the three AA support meetings he attended weekly. (DPFOF ¶ 28.) At the plaintiff's first ZCI treatment group meeting, the counselor, James Wagner, informed the plaintiff that he could attend any type of AODA support group that he was comfortable with. (DPFOF ¶ 29.)

On July 11, 2004, after the plaintiff started a new job at Champion Environmental Services, Inc., he reported that he was working long hours and having problems making his appointments with ZCI and Briggs (DPFOF ¶ ¶ 30-31). The ZCI counselor, indicated on August 5, 2004, that he suspected that the plaintiff was drinking alcohol at his workplace. (DPFOF ¶ 32.) The next day, Briggs went to the plaintiff's work site and conducted a Breathalyzer test. (DPFOF ¶ 33.) Although the plaintiff submitted

7

to the test, he became extremely irate, loud and disrespectful to Briggs. (*Id.*) However, he tested negative for alcohol. (*Id.*)

On August 7, 2004, the plaintiff sent an e-mail to Briggs advising that he walked out of his ZCI treatment meeting due to religious conflicts. (DPFOF ¶ 34.) He stated that the ZCI counselor, was forcing religion on him. (Id.) Nevertheless, on August 10, 2004, the plaintiff attended his ZCI treatment group. (DPFOF ¶ 35.) The ZCI counselor wrote in his treatment notes that the plaintiff came to the AODA treatment group angry and agitated. (Id.) Also, the plaintiff was unwilling to discuss what was bothering him and slammed the door on his way out of the group. (Id.) As this was the plaintiff's third unexcused absence from the group, he was discharged as receiving the maximum benefit from the program. (Id.) The program found that the plaintiff was very involved with employment and did not make all his scheduled treatment appointments. (Id.)

The plaintiff claims that "God was discussed regularly and religious prayers were read out of AA reflection books" at his ZCI treatment group meetings. (DPFOF ¶ 36.) On the other hand, the ZCI counselor indicated that he did not read from the Bible, the AA reflection books or recite religious prayers or passages. (DPFOF ¶ 37.) According to the ZCI counselor, he read from the Hazelton Meditation Book, which was not religious and did not speak of God. (*Id.*) Offenders, including the plaintiff, can attend any support group they are comfortable with and it does not have to be AA or another religious-based group. (*Id.*) (DPFOF ¶ 38) Moreover, the plaintiff never informed Briggs that he did not want to attend the ZCI treatment group or AA due to religious reasons. (DPFOF ¶ 39.) Also, the ZCI counselor never informed Briggs that the plaintiff indicated to him that he did not want to attend the ZCI treatment group or AA. (*Id.*)

On August 11, 2004, Briggs learned from ZCI that the plaintiff missed at least three treatment groups and was going to be discharged. (DPFOF ¶ 40.) Briggs then spoke with his supervisor, Julia Stark, and they decided to place the plaintiff into custody at the Racine County Jail pending an investigation of these violations pursuant to Wis. Admin. Code DOC § 328.22. (*Id.*) It was concluded that the plaintiff could be released from jail if he accepted the Department of Corrections' funded counseling and the Smart Program in Kenosha (a nonreligious support group). (*Id.*)

The next day, Briggs visited the plaintiff at the Racine County Jail and took his statement. (DPFOF ¶ 41.) The plaintiff informed Briggs that he was not interested in hearing any prayers or religious readings and had lost trust in the ZCI treatment program. (*Id.*) Eventually, the plaintiff agreed to attend the Smart Program in Kenosha. (*Id.*) At no time did Briggs force the plaintiff to attend a religious-based AODA program. (DPFOF ¶ 42.) In addition, at no time did the plaintiff inform Briggs or complain to Briggs that he did not want to attend the ZCI treatment group or AA for religious reasons. (DPFOF ¶ 43.)

At all times relevant to this action, defendant Matthew Frank (Frank) has been employed as the Secretary of the DOC. (DPFOF ¶ 44.) In his capacity as the Secretary of DOC, Frank has the responsibilities generally defined by Wis. Stat. § 15.04, and as otherwise set forth in the Wisconsin Statutes and the Wisconsin Administrative Code. (DPFOF ¶ 45.) Although Frank has general supervisory authority over DOC operations, as provided in the Wisconsin Statutes, he does not supervise the day-to-day operations of the DCC or its employees, specifically, probation/parole agents. (DPFOF ¶ 46.) Frank does not provide services to persons on probation/parole within the DCC. (DPFOF ¶ 47.) Such services are provided to individuals by staff employed by the DCC.

(*Id.*)  Indeed, Frank exercises no day to day supervisory control over DCC employees.  (*Id.*)  Moreover, Frank had no personal involvement with the probation/parole conditions imposed on the plaintiff.  (DPFOF ¶ 48.)  He did not force the plaintiff into a Christian-based drug treatment program without his signed consent, nor did he supervise or approve of such a placement.  (*Id.*)

## II.  Analysis

The defendants have advanced a number of arguments in support of their contention that they are entitled to summary judgment on both of the plaintiff's claims.  First, they contend that defendant Frank is entitled to summary judgment because the undisputed facts show that he was not personally involved in either of the alleged violations.  Second, the defendants contend that the plaintiff's First Amendment claim concerning his participation in the drug treatment program should have been brought pursuant to a petition for a writ of habeas corpus rather than as a claim under § 1983.  Third, the defendants assert that they are entitled to summary judgment because the undisputed facts show that there was no constitutional violation.  Finally, and in the alternative, the defendants maintain that the defendants are entitled to qualified immunity.

### A.  First Amendment Claim

Plaintiff claims that his First Amendment rights were violated when he was forced to participate in a "Christian based" drug treatment program while on parole.  This claim constitutes a challenge to one of the conditions of the plaintiff's parole.  The

10

defendants submit that this claim should be dismissed because it should have been presented as a petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1]

The Court of Appeals for the Seventh Circuit has held that claims which challenge the conditions of parole should be brought first pursuant to a § 2254 action because they amount to a collateral attack on one's confinement. *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003). Although plaintiff is not challenging his underlying conviction or the length of his sentence, the court of appeals has reasoned that a parolee's challenge to the conditions of his parole is a challenge to his custody because a parolee's confinement is defined not by his placement in a prison but by various lesser restrictions on his liberty. *Id*.

When a collateral attack has been brought erroneously as a civil action, the general rule is that it should be dismissed, without prejudice, to allow the plaintiff to refile the claim in a habeas petition. *Id.; See Rogers v. Wisconsin Department of Corrections,* 2005 WL 300291 (W.D. Wis. Feb. 3, 2005). Therefore, the plaintiff's First Amendment claim concerning the requirement that he participate in a drug treatment program as part of the ATR will be dismissed, without prejudice.

**B. Due Process Claim**

The plaintiff's remaining claim is that his Fourteenth Amendment due process rights were violated when he was placed in jail overnight without a hearing after he missed his third ZCI AODA support group meeting. The defendants argue that this claim should be dismissed because the plaintiff had no constitutional right to a hearing prior to being

---

[1] The plaintiff has not provided any response to this argument in his brief.

taken into custody after he violated the conditions of his parole.  Again, plaintiff does not address this argument in his brief in response to the defendants' motion for summary judgment.

An individual on parole has a protected liberty interest concerning his status as a parolee. *Morrissey v. Brewster*, 408 U.S. 471, 482 (1972).  Thus, parole may not be revoked without providing the parolee due process of the law.  The United States Supreme Court has held that the due process clause of the Fourteenth Amendment requires that persons detained because of suspected parole violations are entitled to two separate hearings: a preliminary hearing soon after the individual's detention and a hearing before a final decision is made on revocation. *Id.* at 485.  With respect to the preliminary hearing, the Supreme Court requires that the hearing occur "as promptly as convenient *after* arrest" and that "someone not directly involved in the case" make the determination.  *Id.* (emphasis added).

The High Court's decision makes it clear that the due process clause does not require a parolee to receive a hearing prior to being detained on alleged parole violations, and the plaintiff has not provided any legal authority to the contrary.  Moreover, the Wisconsin Administrative Code provides that a parolee may be taken into custody and detained (1) for an investigation of an alleged violation by the parolee, (2) after an alleged violation by the parolee to determine whether to commence revocation proceedings, (3) for disciplinary purposes, or (4) to prevent a possible violation by the parolee. Wis. Admin. Code § DOC 328.22(2)(a), (b) and (d).

The undisputed facts show that the plaintiff was detained at the Racine County Jail after he missed three ZCI treatment group appointments pending an

investigation into these alleged violations and was released the next day after he agreed to attend the Smart Program in Kenosha.  (Briggs Aff., ¶¶ 39-40.)  Under the controlling precedent, his detention without a prior hearing did not violate the Constitution.  Therefore, plaintiff's due process claim will be dismissed, with prejudice.[2]

Now, therefore,

**IT IS ORDERED** that the defendants' "Motion for Summary Judgment" (Docket #22) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's First Amendment claim is **DISMISSED**, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's Fourteenth Amendment due process clause claim is **DISMISSED**, with prejudice.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U.S. District Judge

---

[2] Because both of the plaintiff's claims are being dismissed, the court need not address the defendants' other arguments concerning the lack of personal involvement on the part of defendant Frank and qualified immunity.